JgFOIL, J.
The defendant, Linnette Marie Brice, was charged by grand jury indictment with one count of manslaughter, a violation of La. R.S. 14:31. She pled not guilty and, following a jury trial, she was found guilty as charged by unanimous verdict. The defendant moved for a new trial and post-verdict judgment of acquittal, but the motions were denied. She was subsequently sentenced to ten years at hard labor. The defendant’s motion for reconsideration of sentence was denied. She now appeals, designating three assignments of error.
FACTS
On July 23, 1998, the defendant fatally shot the victim, Oliver Perry Dyson, while he was using the toilet in her home. The bullet entered the victim’s right shoulder and passed through both of his lungs. At the time of his death, the victim had an unlit cigarette in one hand and a cigarette lighter in the other. His blood alcohol level was .20 grams percent, a level at which slurred speech, staggering gait, and double vision could be expected.
In a taped statement given the day of the offense, the defendant gave the following account of the circumstances surrounding the shooting. The victim woke the defendant at her home at approximately 7:00 a.m. that morning. The defendant dialed a telephone number for the victim, and he made arrangements to obtain some liquor on credit. The victim left and returned with wine for himself and beer for the defendant. Later in the day, while the victim was using the toilet, the defendant went into the bathroom and told the victim to hurry because she had to urinate. The victim grabbed the defendant, slapped her, threw her into the bathtub, and tried to pull her shorts down. He told her he was going to rape her. The defendant ran to her bedroom, retrieved a single-shot .22 caliber rifle, closed her eyes, and shot the victim once. The defendant attempted to telephone for help, but no one answered her 911 call. She then asked a passerby to call 911 for her.
The defendant flagged down the police when they arrived, admitted she had shot the victim, and told them he was inside her house. The defendant had no visible *618 bruises, swelling, discoloration, knots, cuts, bumps, or anything extraordinary about her | aface. A single-shot, bolt-action .22 rifle and a rifle with a loaded magazine were recovered from the defendant’s home.
At trial, the defendant testified that she had known the victim for approximately three years. She cooked him lunch on the day of the incident, drank with him, and danced with him. The defendant stated that the victim called her into the bathroom before the incident and told her he was going to rape her. She thought he was joking, but the victim said he was serious and slapped her. The victim choked her before throwing her into the bathtub. He kept telling her he was going to rape her and told her he would not leave until he had raped her. When the defendant got out of the bathtub and tried to walk past the victim to leave the bathroom, the victim grabbed her shorts and began pulling them. The defendant was able to get away from the victim and ran to her bedroom. She grabbed her gun, pointed it at the victim, closed her eyes, and shot him. The defendant testified she believed the victim was going to rape and kill her.
CHARACTER EVIDENCE OF THE VICTIM
In assignment of error number one, the defendant contends the trial court erred in refusing to admit evidence of the victim’s history of assaultive behavior, specifically the fact that he had been convicted of rape. She argues the evidence was admissible pursuant to La. Code Evid. art. 404 and her constitutional right to present a defense.
At the beginning of trial, in connection with a self-defense theory, the defense moved for permission to establish before the jury that the victim was convicted of attempted rape in approximately 1977.[1] The state objected, arguing the conviction was twenty-eight years old and defense counsel was merely attacking the victim’s character. The court inquired whether or not the defendant had knowledge of the victim’s prior conviction at the time of the instant offense, and the defense answered negatively. The court denied the defense motion, ruling the prior conviction was too old and was inadmissible under the Code of Evidence and the jurisprudence. The court noted that the defense was free, pursuant to La.Code Evid. art. 404 A(2), to introduce evidence of |4the victim’s reputation in the community for violence upon a showing of appreciable evidence of an overt act of violence.
La.Code Evid. art. 404 provides, in pertinent part:
A. Character evidence generally. Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
[[Image here]]
(2) Character of victim, (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, ... provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible....
[[Image here]]
*619 B. Other crimes, wrongs, or acts.
[[Image here]]
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim’s prior threats against the accused or the accused’s state of mind as to the victim’s dangerous character is not admissible....
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that, at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created, in the mind of a reasonable person, a belief that he was in immediate danger of losing his life or suffering great bodily harm. Once evidence of an overt act by the victim is established, evidence of threats and of the victim’s dangerous character is admissible for two distinct purposes: (1) to show the defendant’s reasonable apprehension of danger that would justify his conduct, and (2) to help determine who was the aggressor in the conflict. State v. Miles, 98-2396, p. 7 (La.App. 1 Cir. 6/25/99), 739 So.2d 901, 906, writ denied, 99-2249 (La.1/28/00), 753 So.2d 231. In order for evidence to be admissible to show the defendant’s reasonable apprehension of danger, it must be shown that the defendant knew of the victim’s prior acts of violence or reputation for violence. On the other hand, if the evidence is to be introduced to help determine who was the aggressor in the conflict, there is no requirement that the defendant have knowledge of the victim’s prior acts or reputation. | ..¡However, only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor. State v. Terry, 94-0622, p. 13 (La.App. 1 Cir. 4/7/95), 654 So.2d 455, 462, writ denied, 95-1180 (La.10/13/95), 661 So.2d 494.
Evidence of an overt act has been interpreted as “appreciable evidence” in the record relevantly tending to establish the overt act. Once the defense has intro- ' duced appreciable evidence relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and denying the accused a defense permitted him by law. State v. Miles, 98-2396 at pp. 7-8, 739 So.2d at 906. Defense testimony may constitute the appreciable evidence relevantly tending to establish the overt act; See State v. Brooks, 98-1151, p. 10-11 (La.App. 1 Cir. 4/15/99), 734 So.2d 1232, 1237-1238, writ denied, 99-1462 (La.11/12/99), 749 So.2d 651.
In the instant case, the defendant testified that the victim threatened to rape her, slapped her, choked her, and attempted to pull her shorts down. This testimony constitutes appreciable evidence relevantly tending to establish an overt act against the defendant of such character that would have created, in the mind of a reasonable person, a belief that she was in immediate danger of losing her life or suffering great bodily harm. Therefore, evidence of the victim’s dangerous character was potentially admissible to show the defendant’s reasonable apprehension of danger that would justify her conduct and/or to help determine who was the aggressor in the conflict. Here, evidence of the victim’s prior rape conviction was inadmissible to establish the first basis because the defendant had no knowledge of the victim’s prior conviction at the time of the instant offense. Further, we find that evidence of the victim’s prior conviction was inadmissible to.establish the second basis because the evidence was of a specific act, *620 rather than of his general reputation. Accordingly, the trial court did not err in ruling the evidence of the victim’s prior attempted forcible rape conviction was inadmissible under the Louisiana Code of Evidence. Finally, we find that the exclusion of the evidence did not compromise the defendant’s right to present a defense. Therefore, this assignment of error is without merit.
^EXCESSIVE SENTENCE
In assignment of error number two, the defendant contends the trial court erred in imposing an excessive sentence. In assignment of error number three, she contends the trial court erred in denying her motion to reconsider sentence. The defendant argues the trial court failed to give adequate weight to mitigating factors and gave too much weight to aggravating factors. Additionally, she argues the sentence was unconstitutionally excessive.
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
In this case, the trial court ordered a pre-sentence investigation report from the Department of Public Safety and Corrections. The PSI revealed the defendant had no juvenile or adult criminal record other than the instant offense and was officially |7classified as a first felony offender. The defendant graduated from high school, completed various programs at a vocational/technieal school, and served in the United States Navy. However, the PSI recommended incarceration for the defendant because “[n]o one has the right to take another life.”
At the sentencing hearing, the trial court listened to testimony from the defendant concerning her accomplishments and her version of the circumstances surrounding the instant offense, arguments from the state and the defense, and accepted numerous defense exhibits, including copies of the defendant’s certificates, letters written on her behalf, and documentation of the victim’s criminal record. In sentencing the defendant, the court stated that the willful taking of a human life is among the most horrible acts that a person *621 can commit in our society. The defendant testified that she was in fear of her life at the time of the instant offense because the victim was threatening to rape her, but the court did not believe her. The court stated it felt compelled to impose a term of imprisonment upon the defendant, not because there was any undue risk that she would commit this kind of crime again, and not because she was in need of correctional treatment which could best be served by placing her in an institution, but because any lesser sentence would deprecate the seriousness of the crime in the eyes of society. The court noted it had taken into account that the defendant was forty-five years old and had never been in any kind of trouble before, and that the crime committed was a crime of passion. Finally, the court stated it had read the letters offered on behalf of the defendant.
A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. Defendant faced a sentencing exposure of forty years. La. R.S. 14:31 B. The defendant was sentenced to ten years at hard labor. We find that this sentence was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive. Accordingly, these assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.
FOGG, J. dissents and assigns reasons.

. At the sentencing hearing, the defense introduced certified copies of documents from the 22nd Judicial District Court indicating that the victim pled guilty in 1976 to a 1975 attempted forcible rape.