975 So.2d 646 (2007)
STATE of Louisiana
v.
Paul C. PEARSON.
State of Louisiana
v.
Coralnelle Little.
State of Louisiana
v.
Rhonda McGowen.
Nos. 07-KA-332, 07-KA-333, 07-KA-539.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*648 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Walter G. Amstutz, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Ferdinand J. Kleppner, Attorney At Law, Metairie, Louisiana, Davidson S. Ehle, III, Attorney at Law, Gretna, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and CLARENCE E. McMANUS.
*649 CLARENCE E. McMANUS, Judge.
Defendants, Paul Pearson, Rhonda McGowan, and Coralnelle Little, were charged in a bill of information on October 12, 2005 with looting during a declared state of emergency in violation of LSA-R.S. 14:62.5(C).[1] Defendants jointly proceeded to trial on May 1, 2006. After a two-day trial, a twelve-person jury found each of the defendants guilty as charged.
Thereafter, defendant Pearson filed a motion for new trial, in which defendants McGowen and Little joined, challenging the constitutionality of LSA-R.S. 14:62.5(C) on the basis it violated the constitutional separation of powers. After a hearing, the trial court found the looting statute was constitutional and denied the motion for new trial. The trial court subsequently sentenced each defendant to 15 years at hard labor without the benefit of parole, probation, or suspension of sentence.
FACTS
At approximately 6:30 p.m. on September 4, 2005, in the aftermath of Hurricane Katrina, Officer Chester Kowalski, with the Jefferson Parish Sheriff's Office, was on patrol when he went to the Sav-a-Center grocery store on Power Boulevard due to looting problems in the area. Upon his arrival, he saw several people exiting the store with various "survival items." He let those people go based on an unwritten policy not to arrest people taking survival items or personal hygiene items.
Officer Kowalski then entered the store. The store was in complete "shambles." There was no power, all the windows and doors were broken, the cash registers had been "tore up" [sic], the security system was inoperable, and the cameras were broken. Additionally, the store had been ransacked, the shelves were in disarray, and there were many broken items on the floor.
Inside the store, Officer Kowalski heard bottles clinking together, indiscernible conversation, and a buggy moving. He proceeded towards the noise and saw defendant Pearson pushing a flat cart on which there were 27 bottles of wine and a case of beer. He also observed defendants McGowen and Little pushing a shopping basket containing six cases of beer and four carriers of wine coolers. Officer Kowalski testified that neither the flat cart nor the shopping basket contained any food, sanitary products, or medical supplies. All three defendants were subsequently arrested.
The store director, Greg Jenkins, testified that no one had authority to enter the store or to remove any items from the store. He further testified the store was closed the Saturday before Hurricane Katrina hit, the alarms had been set, and all the doors locked. He stated he returned to the store the Thursday after the storm to find the store in shambles.
All three defendants testified in their defense at trial. Defendant Pearson testified he went into the Sav-a-Center in search of insulin for his diabetic mother and medicine for his poison ivy. He stated he found the insulin and put it into a backpack he had carried into the store. He then walked around the store looking for his companions. Pearson stated he had just located his companions when Officer Kowalski appeared. He testified there *650 was a basket in the middle of the aisle but denied he was rolling it down the aisle. Pearson also denied placing any bottles on the cart. He stated he was in the store less than ten minutes. A backpack Pearson was carrying at the time of his arrest contained insulin, which was subsequently delivered to his mother.
Defendant McGowen testified she went to the Sav-a-Center looking for food. She stated she initially stayed in the car while Pearson and Little went inside, but she eventually went inside herself because they were taking too long. McGowen stated she yelled for Little and followed Little's voice until she found her. McGowen explained she had just found Little, who was standing next to a cart, when she ran into Officer Kowalski. She denied touching any of the items found in the cart and basket and stated she had only been in the store less than five minutes.
Defendant Little testified she went to the Sav-a-Center because Pearson's mother needed insulin. Little explained they did not go to the hospitals for the insulin because the hospitals were not accepting patients. Contrary to McGowen's testimony, Little stated it was she who initially stayed in the car while McGowen and Pearson went inside the store. Little testified she eventually went inside the store and had just located McGowen and Pearson, who had a basket, when Officer Kowalski found them. She denied taking any beer or wine.
CONSTITUTIONALITY OF LSA-R.S. 14:62.5(C)
All three defendants challenge the constitutionality of LSA-R.S. 14:62.5(C). They first argue the statute is unconstitutionally vague. They contend the term "normal security," as used in the statute, is so vague that the average citizen is incapable of discerning its meaning. They maintain the interpretation of what constitutes "normal security" is controlled solely by the arresting and charging authorities. Defendants further allege the statutory terms "act of God," "force majeure," and "mob, or other human agency," are also vague since they fail to notify the average citizen of the specific definition of the elements of looting that result in increased penalties.
Defendants next argue the statute, specifically subsection C, is unconstitutional because it violates the doctrine of separation of powers. Defendants maintain that through subsection C, the Legislature has impermissibly delegated its lawmaking role to the executive branch. Defendants assert that by allowing the governor or chief executive officer of any parish to declare a state of emergency, the Legislature has allowed the executive branch to determine what constitutes a state of emergency, which effectively defines looting and determines the penalty.
After trial, defendant Pearson filed a motion for new trial challenging the constitutionality of LSA-R.S. 14:62.5(C) on the sole basis it violated the constitutional doctrine of separation of powers. Defendants McGowen and Little joined in the motion. The Attorney General's office was served and filed a response brief stating that defendants failed to particularize the grounds for attacking the constitutionality of the looting statute and, therefore, he was unable to respond to the issue. At the hearing on the motion for new trial, defendants simply restated their position that LSA-R.S. 14:62.5(C) violated separation of powers. Defendants never asserted that the statute was vague.
On appeal, defendants challenge the constitutionality of the looting statute on the grounds of vagueness and violation of separation of powers. Defendants' vagueness claim is being raised for the *651 first time on appeal. A new ground for an objection cannot be presented for the first time on appeal. State v. Greene, 06-667, pp. 5-6 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1231, writ denied, 07-546 (La.10/26/07), 966 So.2d 571. Thus, defendants are precluded from challenging LSA-R.S. 14:62.5 on the basis of vagueness and are limited to a review of the constitutionality of the statute on the basis of violation of separation of powers.[2]
A statute is presumed constitutional and the burden of proving its unconstitutionality rests upon the party attacking the statute. State v. Interiano, 03-1760, p. 4 (La.2/13/04), 868 So.2d 9, 13. In determining the constitutionality of a statute, the basic rules of statutory construction must be followed. Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3; State v. Hair, 00-2694, p. 7 (La.5/15/01), 784 So.2d 1269, 1274. A statute should be upheld whenever possible. In construing statutes, courts must strive to give an interpretation "that will give them effectiveness and purpose, rather than one which makes them meaningless." State v. Cunningham, 04-2200, p. 9 (La.6/13/05), 903 So.2d 1110, 1116.
The Louisiana Constitution divides the powers of state government into three branches: legislative, executive, and judicial. The doctrine of separation of powers is stated in La. Const. art. II, § 2, which provides, "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
Legislative authority is exclusively vested in the Legislature. La. Const. art. II, § 1. The determination and definition of acts which are punishable as crimes and their attendant penalties are purely legislative functions, and the Legislature cannot delegate its power to create and define criminal offenses. State v. Miller, 03-206, p. 4 (La.10/21/03), 857 So.2d 423, 427. There are exceptions to the "nondelegation doctrine" that do not violate the doctrine of separation of powers. Miller, 03-206 at p. 5, 857 So.2d at 427. Delegation of purely legislative authority violates the separation of powers, but the delegation of ministerial or administrative authority does not. State v. All Pro Paint & Body Shop, Inc., 93-1316, pp. 5-6 (La.7/5/94), 639 So.2d 707, 711.
The Louisiana Supreme Court has explained:
[T]he Legislature may make the operation or application of a statute contingent upon the existence of certain conditions, and may delegate to some executive or administrative board the power to determine the existence of such facts and to carry out the terms of the statute. So long as the regulation or action of the official . . . authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own *652 terms operates, such regulation is administrative and not legislative in its nature.
All Pro Paint & Body Shop, Inc., supra, quoting Schwegmann Brothers Giant Super Markets v. McCrory, 237 La. 768, 112 So.2d 606, 613 (1959).
The Louisiana Supreme Court has set forth a three-prong test to determine whether a statute unconstitutionally delegates legislative authority as opposed to administrative authority. The delegation of legislative authority does not violate the constitutional separation of powers if the enabling statute (1) contains a clear expression of legislative policy, (2) prescribes sufficient standards to guide the agency in the execution of that policy, and (3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency. All Pro Paint & Body Shop, Inc., 93-1316 at p. 7, 639 So.2d at 712. The supreme court has explained that if a statute meets this three-prong test, it "does not unconstitutionally delegate legislative authorityeven if the authority delegated `relates to' felony offensesbut instead properly delegates only administrative or ministerial authority to `determine[ ] within prescribed limits some facts upon which the law by its own terms operates.'" All Pro Paint & Body Shop, Inc., 93-1316 at p. 11, 639 So.2d at 714-15, quoting Schwegmann, 112 So.2d at 613.
In the present case, defendants challenge LSA-R.S. 14:62.5(C), which at the time of the offense, provided:
C. Whoever commits the crime of looting during the existence of a state of emergency, which has been declared pursuant to law by the governor or the chief executive officer of any parish, when the defendant knew or should have known that a declaration of emergency existed may be fined not less than five thousand dollars nor more than ten thousand dollars and shall be imprisoned at hard labor for not less than three years nor more than fifteen years without benefit of probation, parole, or suspension of sentence.[3]
Defendants contend the delegation of authority to the governor or chief executive officer of any parish to determine and declare a state of emergency violates the separation of powers.
Applying the three-part test, we find that Subsection C of the looting statute is not unconstitutional. The first part of the test requires a clear expression of legislative policy. In LSA-R.S. 29:721, et seq., the Legislature enacted the Louisiana Homeland Security and Emergency Assistance and Disaster Act (HSEDA). This Act enables the governor and parish presidents to declare a state of emergency for the stated purpose of preserving the lives and property of the state, reducing vulnerability of people to damage, injury and loss of life and property resulting from a natural or man-made catastrophe, providing for the orderly start of restoration of persons and property affected by the emergency or disaster, coordinating activities relating to response and recovery among the different participatory agencies, and coordinating resources with the federal government, other states, and private agencies in order to effectively deal with the emergency or disaster. LSA-R.S. 29:722, 724, and 727. The HSEDA's purpose provision establishes a reasonable and definite governmental policy warranting the exercise of the State's police power to respond and protect the lives and property of this State during a natural emergency, *653 such as Hurricane Katrina. Thus, the governor's ability to declare a state of emergency as referenced in LSA-R.S. 14:62.5(C), has a clearly stated legislative policy.
The second and third prong of the test are closely related and require the statute to set forth sufficient standards to guide the governor and parish presidents in the execution of the statute's declared policy with inherent safeguards that prevent unfettered discretion by the agency to whom the authority has been delegated. The guiding standards "need not necessarily be set forth in express terms if they might reasonably be inferred from the statutory scheme as a whole." All Pro Paint & Body Shop, Inc., 93-1316 at p. 13, 639 So.2d at 716.
The standards and limits surrounding the governor and parish president's ability to declare a state of emergency in accordance with the legislative will is sufficiently set forth in the HSEDA. LSA-R.S. 29:723(2) defines emergency as "[t]he actual or threatened condition which has been or may be created by a disaster" or "[a]ny natural . . . event which results in an interruption in the delivery of utility services to any consumer of such services and which affects the safety, health, or welfare of a Louisiana resident." Additionally, disaster is defined as ". . . the result of a natural . . . event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as [a] hurricane. . . ." LSA-R.S. 29:723(1). The HSEDA sets forth specific limitations to the governor's power to declare a state of emergency and reserves to the Legislature the ability to terminate the state of emergency at any time. LSA-R.S. 29:724(B)(2). Furthermore, the HSEDA provides that it is the legislative intent that the principles and criteria outlined in the National Incident Management System (NIMS) be followed in the implementation of the functions set forth in the Act. LSA-R.S. 29:722(C).
The looting statute provides for enhanced penalties for looting when the governor or chief executive officer of the parish declares a state of emergency. The authority of the governor or parish president to declare a state of emergency is set forth in the HSEDA. Based on the three-step analysis above, this authority to declare a state of emergency is administrative in nature and, therefore, does not violate the constitutional separation of powers. The declaration of a state of emergency required by LSA-R.S. 14:62.5(C) is simply a condition that triggers the application of the statute. As previously stated, the Legislature may make the application of a statute contingent upon the existence of certain conditions. All Pro Paint & Body Shop, Inc., 93-1316 at p. 6, 639 So.2d at 711. Subsection C of LSA-R.S. 14:62.5 does not violate the constitutional doctrine of separation of powers. Defendants' allegations of error are without merit.
SUFFICIENCY OF EVIDENCEDefendant Little
In her fourth, fifth and sixth allegations of error, defendant Little argues that the evidence was insufficient to convict, that the trial court erred in denying her motion for post-judgment verdict of acquittal made on that ground, and that the trial court erred in denying her motion for new trial asserting that the verdict was contrary to the law and evidence. She is the only defendant who challenges the sufficiency of the evidence.
The question of the sufficiency is properly raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Hampton, 98-331, p. 12 (La.4/23/99), 750 So.2d 867, 880, cert. denied, *654 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
After trial, Little filed a combined motion for new trial and motion for post-verdict judgment of acquittal based on the trial court's error in denying the motion for mistrial and claiming the verdict was contrary to the law and evidence. The matter was set for hearing on May 15, 2006. The minute entry from May 15, 2006 shows that Little adopted defendant Pearson's motion for new trial raising the constitutional issue of LSA-R.S. 14:62.5(C). The hearing was rescheduled to allow time for the Attorney General's office to be served on the constitutional issue. No mention was made of the motion for post-verdict judgment of acquittal. Little subsequently filed a memorandum in support of the motion for new trial that was based on the constitutionality of LSA-R.S. 14:62.5(C). A hearing was held on June 22, 2006 at which time the trial court denied defendants' motion for new trial based on the constitutionality of the looting statute. Again, no mention was made of the motion for post-verdict judgment of acquittal. Although Little asserts the trial court erred in denying her motion for post-verdict judgment of acquittal, the record fails to show there was ever a ruling on the motion. Furthermore, the trial court did not consider the issue of whether the verdict was contrary to the law and evidence.
LSA-C.Cr.P. art. 821 requires a motion for post-verdict judgment of acquittal be made and disposed of before sentencing. The failure of the trial court to rule on a motion for post-verdict judgment of acquittal is recognized as an error patent that requires the defendant's sentence be vacated and the matter remanded for a ruling. State v. Randolph, 409 So.2d 554 (La. 1981), (per curiam) (on rehearing, 1982); State v. Christian, 05-635, pp. 3-4 (La. App. 5 Cir. 2/3/06), 924 So.2d 266, 267.
We vacate defendant Little's sentence and remand the case for a ruling on her motion for post-verdict judgment of acquittal, as well as her motion for new trial made on the grounds that the verdict was contrary to the law and evidence, reserving to her the right to appeal her conviction and sentence once the trial court has ruled.
ADMISSIBILITY OF EVIDENCE Pearson and McGowan
Defendants Pearson and McGowan argue the trial court erred in admitting three photographs depicting the allegedly looted items without proper authentication. Defendants contend the photographs were admitted without any foundation as to when, where or by whom the photos were taken. The State contends Officer Kowalski's testimony sufficiently established that the photographs were taken by a crime scene technician and accurately depicted what he witnessed at the time of the offense. The State further asserts the photos are cumulative evidence and any error in their admissibility is harmless.
The State introduced the three photographs at issue during the testimony of Officer Kowalski. He was shown the photographs and stated he had previously seen the photos. He explained one photo depicted the shopping basket the two female defendants had, one showed the push cart with the 27 bottles of alcohol that Pearson was pushing, and the third was another photo of the push cart. Defendants immediately objected to the photographs on the basis the foundation laid was insufficient for their admission. Defendants argued Officer Kowalski did not take the photographs, the photographer did not testify, and the photos were a simple depiction of the items and not the actual items. The trial court overruled the objection stating the photographs "accurately *655 reflect what happened that day." The store director later testified the cart in the photographs belonged to the store and the liquor shown in the photos is the type of liquor sold by the store.
Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted. State v. Becnel, 04-1266, p. 16 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 851. The proper foundation for the admission of a photograph into evidence is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. Id. It is well settled that a photograph need not be identified by the person who took it to be admissible. Id.
Officer Kowalski identified the photographs as taken of the shopping basket and cart defendants were pushing in the store at the time of the incident. The photographs clearly shed light on the described looted items. Thus, the photographs were properly admitted.
EXCESSIVENESS OF SENTENCE
The defendants argue their maximum 15-year sentences are excessive. They rely on the fact none of them had criminal records and point to the dire state of the parish in the aftermath of Hurricane Katrina where food, water, and transportation were lacking. Defendants assert the trial judge failed to consider mitigating factors and instead based the sentences on his personal and emotional feelings of the crime of looting. They contend many other people were committing the same acts but were not even arrested. They further maintain looting is a non-violent offense.
Defendants were convicted of looting during a declared state of emergency and faced a sentencing range of three to fifteen years without the benefit of parole, probation, or suspension of sentence and a possible fine between $5,000 and $10,000. LSA-R.S. 14:62.5(C). Defendants each received the maximum 15-year sentence but none received a fine.
In imposing sentence, the trial judge expressed he did not like the crime of looting and thought it was an awful crime, a sentiment he claimed he held even before Hurricane Katrina. He noted defendants had better living arrangements post-Katrina than most people because they had electricity. He did not believe defendants' testimony that they did not have the means to evacuate prior to the storm and concluded they were "not as destitute as they made themselves out to be." The trial judge questioned the veracity of Pearson's testimony that he went into the store solely for insulin and cited the contradictory testimony of defendants. He concluded defendants perjured themselves and found their perjury outweighed their lack of criminal records. The trial judge ultimately stated, "I think it's important that this Court send a message to the general public that if you're going to loot, don't do it in Jefferson Parish."
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261, p. 10 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate *656 as to shock our sense of justice. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Brown, 04-230, p. 4 (La.App. 5 Cir. 7/27/04), 880 So.2d 899, 902. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Brown, 04-230 at pp. 4-5, 880 So.2d at 902. Generally, the maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Rhea, 03-1273, p. 11 (La.App. 5 Cir. 2/23/04), 868 So.2d 863, 870.
Recently, in State v. Harris, 07-124, p. 7 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, this Court suggested the defendants five-year sentence for his looting conviction under LSA-R.S. 14:62.5(C) was excessive. Although this Court did not actually reach the issue of excessive sentence because of another sentencing error that required a remand for resentencing, it encourage[d] the trial court to consider the mitigating circumstances and the letters written on the defendants behalf, and consider a more appropriate sentence for this defendant. Id. at p. 8, 968 So.2d at 197. The defendant was convicted of looting the Gretna Supermarket on the day Hurricane Katrina struck the New Orleans area and taking 22 bags of hair extensions, 31 cans of Mad Dog 20/20 alcohol, 34 cans of Budweiser beer, and 14 cartons of cigarettes. This Court noted the defendant was a first time offender convicted of a non-violent crime, was in high school at the time of the offense, attended career classes after school, and maintained a part-time job.
Additionally, in State v. McGee, 07-130, pp. 2-3 (La.App. 5 Cir. 6/26/07), 963 So.2d 449, 450-51, the defendant was convicted of looting during a state of emergency and received the minimum sentence of three years. The defendant was convicted of taking two Heineken beer bottles and nine other bottles of alcohol from a Brothers Food Mart in the aftermath of Hurricane Katrina. Defendant did not challenge his three-year sentence on appeal.
We have reviewed the records in this matter and find that the defendants 15-year sentences in the present case are excessive. The record reflects Defendant Pearson, age 36, cared for his diabetic mother, was employed at the time of the offense and at the time of trial, and had never been convicted of a crime. Defendant McGowen, age 42, had never been arrested prior to the current offense. Pastor James Turner testified on McGowans behalf and explained her involvement in the church. He stated he has known McGowen for 24 years and that she directs the church choir, coordinates music for the church, and volunteers around the church. He testified that she is responsible and dependable. Defendant Little also had never been convicted of a crime prior to the present offense. Little was employed immediately after the offense and through the time of trial. In fact, she was hired by the same Sav-a-Center she looted three months after the incident. The store director testified Little was a good employee.
Defendants were convicted of looting a grocery store. They were caught inside the store next to a cart and a basket full of alcoholic beverages. They did not attempt to run from the police officer and were compliant with the officers requests. All three defendants were first time offenders *657 and Pearson and Little were employed at the time of trial. These facts do not place any of the three defendants in the category of the most egregious offenders of the crime of looting.
There is no doubt defendants committed a despicable crime. Although the general public would agree with the trial judge that the crime of looting is particularly loathsome, the Legislature has already taken into consideration the predatory and exploitive nature of the offense when it set the sentencing range for looting. The record does not reveal defendants are the worst offenders of this offense. Thus, we find that defendants maximum 15-year sentences are unconstitutionally excessive.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review does not reveal any errors patent.
CONCLUSION
For the above discussed reasons, defendant Little's sentence is annulled, vacated and set aside, and her case is remanded, reserving to her the right to appeal her conviction and sentence once the trial court has ruled. The convictions of McGowan and Pearson are affirmed; their sentences are hereby annulled, vacated, and set aside, and this matter is remanded to the district court for resentencing in accordance with the views expressed herein.
CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED (McGowan and Pearson); SENTENCE VACATED AND REMANDED (Little).
NOTES
[1] All three defendants were tried together and all three individually appealed their conviction and sentence. The appeals of Pearson (07-KA-332) and McGowen (07-KA-333) are identical and raise the same three issues. The appeal of Little (07-KA-539) raises two of the same issues as Pearson and McGowen and one additional issue. Defendants' motion to consolidate their appeals was granted by this Court.
[2] See State v. Young, 04-1318, pp. 13-14 (La. App. 5 Cir. 4/26/05), 902 So.2d 461, 470, where this Court found constitutional issues are no exception to the general rule that an issue not raised in the trial court will not be considered on appeal. Additionally, it is noted that this Court recently found the phrase "normal security", a phrase challenged by the present defendants, as used within LSA-R.S. 14:62.5 was not vague and did not render the statute unconstitutional. State v. Hines, 07-312, pp. 3-5 (La.App. 5 Cir. 10/30/07), 970 So.2d 1134.
[3] LSA-R.S. 14:62.5(C) was amended by Acts 2006, No. 165, § 1 to delete "when the defendant knew or should have known that a declaration of emergency existed."