*675
 
 JUDE G. GRAVOIS, Judge.
 

 | gDefendant, Allen E. Cotton, appeals his 10-year sentence for manslaughter, arguing that it was excessive. For the following reasons, we affirm defendant’s sentence, finding that it is not unconstitutionally excessive. We also remand for correction of an error patent.
 

 PROCEDURAL BACKGROUND AND FACTS
 

 On January 14, 2005, the Jefferson Parish District Attorney filed a bill of information charging defendant, Allen E. Cotton, with manslaughter in violation of LSA-R.S. 14:31. Defendant pled not guilty to this charge on January 18, 2005. After a five-day trial, on July 27, 2007, a unanimous 12-person jury found defendant guilty as charged. On September 5, 2007, the trial court sentenced defendant to ten years imprisonment at hard labor. Defendant was granted an out-of-time appeal on July 7, 2009.
 

 On November 19, 2004, between 5:00 and 5:30 a.m., Officer Brian McDessey of the Gretna Police Department responded to a disturbance call | sconcerning two males fighting in the parking lot of the Oasis Motel on the Westbank Expressway in Jefferson Parish. When Officer McDes-sey arrived at the scene, another officer was giving medical attention to one of the males involved in the fight, Warren Johnson, who was lying in the parking lot across from Room 18 of the motel. Although Mr. Johnson, the victim, was transported to the hospital, he died from a lethal stab wound to the left side of his neck.
 

 People who were outside of the motel after the incident directed Officer McDes-sey to Room 28 of the motel where the other male involved in the fight had retreated after the fight. Officer McDessey and another officer went towards the room at the same time that a male, the other person involved in the fight, exited the room with his hands up, stating that his actions were done in self-defense. This male, later identified as defendant, was brought to the backseat of a patrol unit and eventually transported to the police station. Officer McDessey described the defendant’s demeanor at the scene as very calm and said that he was not nervous or crying.
 

 Photographs and a video were taken of the crime scene. There was blood in the parking lot and inside of Room 28. A knife blade was found in a corner inside of Room 28. Bloody socks or towels were found in a trash can underneath a stairwell at the motel. It appeared that someone had taken a shower to clean blood off in the bathroom of Room 28. There was a suitcase on the bed in the room as well. A small notebook was found in the suitcase.
 

 Several persons who had witnessed the struggle in the parking lot of the motel were interviewed. Some of the witnesses also testified at trial.
 

 Tasleem Adiniji was staying in Room 33 at the Oasis Motel at the time of the incident. On the morning of November 19, 2004, he was in his room praying when he was interrupted by “commotion” he heard outside. He went outside on |4the balcony and observed two naked people fighting in the parking lot. One person was stooping over the other person, who was lying on the ground. Mr. Adiniji told the person on top to leave the other one alone, and the person on top said the other person was beating him and was drunk. According to Mr. Adiniji, the person on top then left.
 

 Kim Dorsey was staying in Room 41 at the Oasis Motel on the date in question when she heard a man yelling for help and that he was being killed. She went outside and saw a man falling to the ground and
 
 *676
 
 another man swinging his hand. She testified that the men were in the parking lot naked, with one only wearing socks. She ran back into her room and called the front desk and asked the clerk to call the police. She returned to the balcony and noticed the men were still there. She testified that she could not see what was in hand of the man who was swinging his hand, but described him as stabbing the other man with something. She testified that the victim was on the ground and was gasping for air. She claimed to hear gurgling sounds. She screamed for the man on top to stop and said the police were coming, but he continued. She also testified that she heard the man on top say “Bitch; [sic] you’re going to leave me. You’re going to leave me.” She saw the man on top kick the victim in his face. She said she did not see the victim kick or punch the other man or threaten to kill him. She then saw the man who was on top take his socks off on the way to the stairs and then go up to his room. She watched the room until the police came.
 
 [1]
 

 Joette Kanter was employed by the Oasis Motel as a desk clerk when she received a call from Room 41 around 5:15 or 5:30 a.m. on the date of the incident. After Ms. Dorsey told her about the confrontation in the parking lot, Ms. Kanter called for help and then went outside. She saw two people fighting in the parking |slot around Rooms 17 and 19 and one was screaming for help, saying that the other was trying to kill him. She testified that she did not receive any calls for help from Room 28. She explained that even if the deposit on the phone in Room 28 was used, room occupants could still contact the office and call 911 for help. The motel had surveillance equipment. She gave the surveillance tape to the police. The jury viewed the surveillance video during the trial.
 

 Alfred Disler of the Gretna Police Department arrived at the motel and interviewed Freddie Bonds, who was staying in Room 17 of the motel. He transported Mr. Bonds to the station and recorded his statement. Mr. Bonds was unavailable for trial, but the jury heard his recorded statement. According to his statement, Mr. Bonds was standing outside the door of Room 17 at about 5:15 a.m. on the date in question when he heard two men coming down the stairs. The naked men went to the parking lot where one of the men fell and the other started kicking him and beating him in the back of his head. He believed the victim was gasping for air, gagging, or throwing up while he was coming down the stairs and it continued when he was in the parking lot. The victim was trying to say something, but Mr. Bonds did not understand him. He said the one doing the beating was wearing socks.
 

 Merrilue Mataya arrived to work on the Friday morning of the homicide at the Oasis Motel. The police questioned her about any contact she had with the man staying in Room 28. She testified that on the Saturday afternoon before the incident, the man had approached her and asked her to program his TV in Room 28 to a sports channel. She said she asked him if anyone would be in the room when she went to do it and he told her no, that his boyfriend would be back later.
 

 Detective Donald McCoy of the Gretna Police Department advised defendant of his rights and asked if he had injuries, to which he replied that he did Rnot. According to Detective McCoy, defendant had scratches to his right hand, left shoulder, and left neck area. Defendant was
 
 *677
 
 not bleeding and his skin had not been broken. Defendant claimed that he was slapped across his head a few times and kneed in the chest, but Detective McCoy did not observe injuries that would have been consistent with this.
 

 Defendant gave a taped statement on the day of the incident. The jury heard a recording of this statement. In this statement, defendant said he met the victim, Stacy, on the “Party Line” and had been talking on the telephone to her for a little over a month. He explained that Stacy was supposed to be a girl and they had talked the day before and were finally going to meet. She came to the motel room sometime before midnight, but Stacy was really a man. Defendant said that he explained that he thought Stacy was a girl and he did not “get down like that.” He said Stacy then said he had a gun and a knife in his bag and that they would do the things they had talked about doing. He showed defendant the knife about 45 minutes to an hour after he arrived. Defendant said that the victim also threatened him that if he ran, someone was downstairs in his BMW.
 

 Defendant testified that the victim told him to take off his clothes. Both men took their clothes off and then defendant performed oral sex on the victim. Defendant said that when the victim tried having anal sex with him he pushed the knife out of the victim’s hand and retrieved it.
 
 [2]
 
 He said the victim was hitting him and he stabbed him with the knife. Defendant said the fight started in the room, but continued outside. He said he noticed while he was on the stairs that the blade of the knife had fallen off. He said he then went back to the room and tried to use the phone, but “you got to put money on it to use the phone.” He went to the shower to wash the blood off of him and put some pants on. He was then going to |7call the police but the police were already there. Defendant denied ever having a relationship with a male before. He concluded his statement by saying he was wrong for what he did but that it was done in self-defense because he felt his life was threatened.
 

 Detective McCoy testified that phone records were obtained and showed the victim called the motel three times on November 18th. Detective McCoy explained that defendant denied that he knew the victim was a male. However, the “little black notebook” from inside the suitcase located in the room contained the victim’s cell phone number with the name “Warren” written above it. Further, Detective McCoy explained that defendant told him that the victim had arrived around midnight and that defendant was in the room with the victim for about five hours. Detective McCoy explained that defendant did-not barricade himself in the bathroom and had an opportunity to leave and went outside at one point but did not run or yell.
 

 Detective Richard Russ of the Gretna Police Department was present when Detective McCoy filled out the rights of ar-restee form with defendant and advised him of his Miranda
 
 [3]
 
 rights. Detective Russ testified that defendant never showed emotion or seemed sad when describing the incident. He also seemed calm when he was transported to the hospital for the rape examination.
 

 Warren Carmouche, the decedent’s father, testified that he did not know his son to carry a knife, but knew he worked for
 
 *678
 
 the sheriffs department and had a gun. He stated that he did not know his son’s sexual orientation, but suspected he may not have been heterosexual.
 
 [4]
 
 He also stated that his son did not have a criminal history.
 

 1 sDr. Susan M. Garcia, an expert in the field of forensic pathology, determined that the decedent was a victim of a homicide and explained that the stab wound, which was five to six inches of maximum penetration, resulted in injury to vessels in the back of his throat and caused him to bleed into his lungs. She described the bleeding as continuous and gradual and explained that the decedent would still have been capable of movement. The victim also had a nonlethal stab wound on his lip and a small, superficial puncture wound on his right chest area. Dr. Garcia also noted that the victim did not have any defensive wounds and did not have drugs or alcohol in his system when he died.
 

 Three defense witnesses testified. Erin Maurice testified that she met defendant on the internet and had sexual relations with him, including at the Oasis Motel in his room on the Tuesday evening before the incident. Defendant’s friend, Jason Mims, testified that he never knew defendant to have homosexual tendencies. Mr. Mims said that the defendant talked to a female named Stacy on the phone a couple of times. Defendant’s friend, Allen Sonnier, Jr., also testified that he never knew defendant to have homosexual tendencies. He testified that Stacy called for defendant all the time and he had talked to her but had never met her.
 

 ASSIGNMENT OF ERROR
 

 In his only assignment of error, defendant argues that although the trial court stated that it knew defendant was a first time offender and had acted under provocation, his ten-year sentence was imposed without the trial judge fully taking into account the mitigating circumstances of the case. He argues that the sentence is too harsh for the act of self-defense that resulted in an accidental killing in which defendant demonstrated great remorse.
 

 |c|The State responds that the trial court took into consideration the facts of the case and defendant’s background before sentencing defendant to one-fourth of the maximum penalty for manslaughter. The State further contends that other cases have displayed that such a sentence is not unconstitutionally excessive. It concludes that because defendant has failed to show an abuse of discretion by the trial judge, there is no merit to this claim and the sentence should be affirmed.
 

 The trial court listened to victim impact statements and then heard defendant’s apology to both his family and the victim’s family. The trial court considered that this incident involved an act of violence and the use of a dangerous weapon, and recognized that defendant acted under provocation and before this incident had led a law-abiding life. Defendant received a sentence of ten years at hard labor. The punishment for manslaughter is imprisonment at hard labor for not more than forty years. LSA-R.S. 14:81(B).
 

 The record reflects that defendant did not file a motion to reconsider his sentence pursuant to LSA-C.Cr.P. art. 881.1, nor did he object to his sentence at the time his sentence was imposed. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional ex-
 
 *679
 
 cessiveness only.
 
 State v. Warmack,
 
 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 108;
 
 See also
 
 LSA-C.Cr.P. art. 881.1.
 

 In his brief, defendant makes reference to LSA-C.Cr.P. art. 894.1
 
 [5]
 
 and argues that the trial judge failed to consider mitigating factors in his case. As noted above, defendant did not make or file a motion to reconsider his sentence, nor did he object to his sentence at the time of sentencing. As such, to the extent that defendant argues that the judge failed to articulate his reasons for sentencing | ]0pursuant to LSA-C.Cr.P. art. 894.1, defendant is precluded from raising such an issue on appeal.
 
 See State v. Declouet,
 
 09-1046 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 99;
 
 State v. Ridgley,
 
 08-675, p. 20 (La.App. 5 Cir. 1/13/09), 7 So.3d 689,
 
 writ denied,
 
 09-0374 (La.11/6/09), 21 So.3d 301. In any event, this Court has held that where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1.
 
 Declouet, supra
 
 at 100.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment.
 
 State v. Pearson,
 
 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655. A sentence is considered excessive, even when it is within the applicable statutory range, if it imposes needless and purposeless pain and suffering or is grossly disproportionate to the offense.
 
 Warmack,
 
 07-311 at 7, 973 So.2d at 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice.
 
 Pearson,
 
 07-332 at 15, 975 So.2d at 655-56. The trial judge is afforded wide discretion in determining a sentence.
 
 Id.
 
 at 15, 975 So.2d at 656.
 

 In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. The relevant issue on appeal is whether the trial court abused its sentencing discretion, and not whether another sentence might have been more appropriate.
 
 Pearson,
 
 07-332 at 15-16, 975 So.2d at 656.
 

 In
 
 State v. Batiste,
 
 07-482 (La.App. 3 Cir. 10/31/07), 969 So.2d 704, the Third Circuit found the defendant’s 20-year sentence for his manslaughter |n conviction was not excessive despite his being a first time offender and his argument in the trial court that he acted under strong provocation. In
 
 Batiste,
 
 where the defendant had been charged with second degree murder but convicted of manslaughter, the court noted the victim had been taunting the defendant and had been picking at the defendant to fight him the entire evening leading up to the incident.
 

 In
 
 State v. Brice,
 
 00-2178 (La.App. 1 Cir. 5/11/01), 808 So.2d 615,
 
 writ denied,
 
 01-1610 (La.4/26/02), 813 So.2d 1099, the First Circuit found the defendant’s ten-year sentence was not unconstitutionally excessive. The defendant was a first time offender who testified that she was in fear of her life at the time of the offense because the victim was threatening to rape her. The trial court did not believe her, but believed it was a crime of passion. The First Circuit found that the sentence was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.
 

 
 *680
 
 Based on the foregoing, we find that defendant’s ten-year sentence does not shock our sense of justice. Even if defendant had no criminal record, the nature of the crime shows that such a sentence is not excessive after considering the circumstances of this case. Defendant used a knife to inflict a stab wound to the victim’s neck that was deep enough to injure vessels in the back of his throat. The blade of the knife broke, and a struggle with the bleeding victim continued out of the room, down the stairs, and into the parking lot, where the victim was heard pleading for help. The evidence does not suggest that defendant sought help for the victim, but instead left the victim to drown in his own blood while defendant cleaned himself off. Accordingly, we find that the trial court did not abuse its discretion in imposing a ten-year sentence in this case, and therefore this assignment of error is without merit.
 

 .ERRORS PATENT REVIEW
 

 Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether the defendant makes such a request.
 

 According to the transcript, after sentencing defendant for his manslaughter conviction, the trial court noted that manslaughter was a crime of violence and that the sentence was not subject to diminution for good behavior pursuant to LSA-R.S. 15:571.3. However, the commitment does not reflect this.
 

 Generally, the transcript prevails where there is an inconsistency between the minute entry and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Accordingly, we remand and instruct the trial court to correct the commitment to reflect this. We also direct the district court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced.
 
 See
 
 LSA-C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
 

 CONCLUSION
 

 For the reasons assigned above, defendant’s sentence is affirmed. The matter is remanded to the trial court for correction of the commitment and other relief consistent with this opinion as described above.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . Dorsey had charges pending against her at the time of the incident. She testified that she was not offered any incentive for her statement in this case.
 

 [2]
 

 . Officer McDessey testified that defendant said nothing about the victim trying to rape him.
 

 [3]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [4]
 

 . It was also stipulated that the decedent’s mother told the police that her son never informed her about his personal life.
 

 [5]
 

 . The 2010 legislative amendments to this statute do not apply to this case.