DREW, J.
_jjErik Mack, Jr., was convicted of manslaughter and sentenced to serve 26 years at hard labor. He alleges that the trial court erred in allowing his grand jury testimony to be used at trial. He further claims that his sentence is excessive.
We affirm in all respects.
FACTS
On August 5, 2011, Timmy Knuckles was sitting in his truck on Hearne Avenue in Shreveport when he was rear-ended by a gold Impala driven by an injured Demario Scott, who was on the phone with 911. After Scott exited his vehicle, he collapsed on- the sidewalk. Knuckles observed a bloody chest wound. Two gunshot holes were visible in the driver’s side door of Scott’s vehicle.
*231 James Lattier, a paramedic, responded and transported Scott to the hospital. Scott told Lattier several times, “Erik Mack shot me.”
At the hospital, Scott again implicated the defendant to Dr. Susan Lobrand. Scott had suffered severe internal injuries and died during emergency surgery.
Scott’s identification of the defendant as the man who shot him caused Shreveport Detective Joshua Mayfield and Sergeant Jody Jones to locate and interview him. The defendant waived his rights and admitted that:
• he and Scott were friends at one point, but that the two had suffered a falling out after he discovered that Scott had stolen his gun;
• Scott began sending the defendant threatening text messages;
[¾* he saw Scott on the day he was shot while defendant was driving down Hearne Avenue;
• Scott drove up next to his car and waved a dark-colored handgun at him;
• attempting to flee, he rammed the back of Scott’s car; and
• he denied having a gun with him or shooting at Scott.[1]
The defendant was charged with second degree murder. The state filed notice of its intent to use his grand jury testimony at jury trial. The defendant objected to this notice, but his objection was overruled.[2]
The Caddo Parish A.D.A. who presented the case at grand jury identified a waiver of rights signed by Mack and his attorney. The A.D.A. further identified a transcript and audio recording of Mack’s grand jury testimony. The audio was played for the jury. In the recording, the defendant testified that:
• Mack, Scott, and Scott’s wife attended Byrd High School together;
• after graduating from high school, Mack enlisted in the Army;
• in 2010, while stationed at Fort Bliss, he again crossed paths with Scott;
• the two men became friends;
• he would occasionally stay at Scott’s home;
• in May of 2011, the defendant and Scott’s relationship began to deteriorate after he accused Scott of stealing a gun from him;
• Scott denied taking the gun, but the defendant ended the friendship;
• he then started to receive threatening text messages from Scott;
[¾* the defendant got a final threatening text from Scott, saying he was going to track him down at work and he “hope[d] you have your gun on when I see you because if you don’t I feel sorry for you;”[3]
• a few days later, the defendant was discharged from the Army;
• he moved back to Shreveport;
• on the date of the shooting, he passed Scott’s gold Impala on Hearne Avenue, with the cars traveling in opposite directions;
• Scott turned around and drove up to the right side of his car;
• the two were riding abreast when he saw Scott roll his window down and *232 raise his right arm “as if he was going to fee on me, sir”;
• the defendant grabbed his .40-caliber Glock handgun and feed two shots through his passenger window and into Scott’s car; and
• he admitted falsely telling the police that he did not shoot at Scott.
Mack’s grand jury testimony does not square with the facts of this case.
Shreveport Police Department Corporal Hannah Clark testified that:
• Scott’s window was rolled up when Mack shot at Scott’s vehicle; and
• had the window been down, the bullets would have gone through the window.
Forensic pathologist Dr. James Traylor testified at trial that:
• Scott was not aiming a weapon at the defendant when he was shot; and
• the bullet entered Scott’s chest wall, exited his right side, and reentered his right wrist, indicating that, when shot, Scott was driving with his left hand on the steering wheel and his right hand on his arm rest.
The defendant was found guilty of the responsive crime of manslaughter.
14Months later, a sentencing hearing was conducted.[4]
DISCUSSION

Use of Grand Jury Testimony at Jury Trial

The defendant argues that despite the state supreme court’s decision in State v. Poland, 2000-0453 (La.3/16/01), 782 So.2d 556, the trial court erred in allowing the admission of his grand jury testimony at his trial. The defendant cites Justice Kimball’s dissent in State v. Poland supra, and asks this court to reexamine whether the majority’s decision in that case was correct given the prohibition against the admission of such testimony in La. C. Cr. P. art. 433.
The state emphasizes that State v. Poland, supra, is still good law and the court’s application of the protection from the use of grand jury testimony was primarily designed for the protection of a non-target witness, not a target defendant who voluntarily testifies. The state further argues that, even without use of the grand jury testimony, the evidence of guilt was overwhelming.
In State v. Poland, supra, that defendant was arrested for second degree murder after admitting to police that he had killed his cousin, but claiming he did so in self-defense. A month later, Poland testified before a grand jury. Before Poland testified, he was advised that he was the target of the grand jury investigation, that he could consult with his lawyer and that | she had the right to remain silent. Poland waived his rights, told the grand jury his version of the events, and was subsequently indicted for second degree murder. During Poland’s trial, the state was permitted, over the defense’s objection, to play an audio recording of Poland’s grand jury testimony, which conflicted with the testimony of several of the state’s trial witnesses. As here, that petit jury convicted Poland of manslaughter.
On appeal, Poland argued that the trial court had erred in allowing the state to present his grand jury testimony at trial. *233 This court, on original hearing, affirmed Poland’s conviction. However, on rehearing, we reversed his conviction and sentence, holding that Louisiana’s long-established practice of protecting the secrecy of grand jury proceedings, as provided in La. C. Cr. P. art. 434, prohibited the state from using the defendant’s grand jury testimony during his jury trial.
The state supreme court granted writs and reinstated Poland’s conviction and sentence. The court acknowledged the constitutional and statutory provisions relative to the secrecy of grand jury proceedings, but noted exceptions allowing testimonial disclosure. The court determined that the legislative mandate of secrecy in grand jury proceedings was “designed primarily for a non-target witness and are not significant when a target of the investigation voluntarily testifies before the grand jury with counsel present.” Id. at 559-560, citing State v. Revere, 232 La. 184, 94 So.2d 25 (La.1957), and In re Grand Jury, 1998-2277 (La.4/13/99), 737 So.2d 1. As such, the court concluded:
Here, defendant, while under criminal charges, knowingly and voluntarily waived his right to remain silent and not to | ^incriminate himself. Knowing he was the target of the investigation, he told the grand jury, without compulsion and with his attorney present, his version of the occurrence. Defendant took his chances of persuading the grand jury not to indict him, and he lost. Exclusion of the testimony that defendant intended to be exculpatory would serve absolutely no purpose associated with the secrecy of grand jury testimony or with the fairness of criminal proceedings.
Id. at 560-561.
When evidence is improperly admitted, it is subject to harmless-error analysis. State v. Oliphant, 2013-2973 (La.2/21/14), 133 So.3d 1255.
This case is factually similar to State v. Poland, supra, which we find to be controlling. Mack knew he was the subject of the grand jury investigation. Even so, with advice of counsel, he waived his right to remain- silent. His decision to tell the grand jury his version of the facts, in an attempt to convince the grand jury that he acted in self-defense, is the exact type of testimony that the court in State v. Poland, supra, found to “serve absolutely no purpose associated with the secrecy of grand jury testimony or with the fairness of criminal proceedings.”
Even assuming that the defendant’s grand jury testimony was improperly admitted, this alleged error is harmless, as the facts belie the defendant’s version of the shooting. There were two bullet holes in Scott’s car door. Scott told a paramedic and a physician that the defendant shot him. There was no evidence that Scott was armed. The evidence of guilt is overwhelming.

Excessiveness

The defendant contends that his sentence is excessive, considering his military service and lack of a criminal history. He argues that:
[7* the jury’s verdict of manslaughter indicates its belief that he was not solely responsible for Scott’s death;
• the trial court did not provide a complete and supportive list of aggravating factors justifying the defendant’s sentence; and
• several manslaughter cases received lesser sentences than his 26 years.[5]
*234 The state points out that the trial court considered the sentencing factors set out in La. C. Cr. P. art. 894.1, the presentence investigation, and letters and testimony submitted on behalf of the defendant and the victim. The trial court noted that the crime was committed with a firearm. It found that the defendant was in need of correctional treatment. The state also cites several cases where similar sentences were imposed and affirmed by this court.[6] The state also submits that there was sufficient evidence to convict the defendant of second degree murder and thus he benefit-ted from the jury’s responsive verdict.
Our law on the appellate review of sentences is well settled.[7]
^Manslaughter carries up to 40 years at hard labor. La. R.S. 14:31.
Mack’s cases supporting his request for leniency are distinguishable.[8]
*235 The court listed ample factors considered in its midrange sentence, which is not constitutionally excessive. It certainly does not shock the sense of justice.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. Det. Mayfield pointed out to the defendant that there was no damage to the back of Scott's vehicle and no weapon was found in Scott’s possession or in his car.

. The defendant filed a writ application with this court; it was denied. We advised the defendant that he could raise the issue on appeal. No. 48,508-KW.

.- Before imposing sentence, the trial court denied his post-verdict motions.
The decedent’s mother and wife testified about the impact of Scott’s death on his family, including his three young daughters.
The mother of Mack’s son testified that Mack financially suppprted their son and pointed out that their son would suffer from the absence of his father.

. See, State v. Cotton, 10-409 (La.App.5th Cir.5/31/11), 67 So.3d 673; State v. Henderson, 40,257 (La.App.2d Cir.10/26/05), 914 So.2d 106; State v. Hamilton, 39,168 (La.App.2d Cir.10/27/04), 886 So.2d 638.

. See State v. Anderson, 47,175 (La.App.2d Cir.6/20/12), 93 So.3d 885; State v. Ingram, 45,546 (La.App.2d Cir.6/22/11), 71 So.3d 437, writ denied, 2011-1630 (La.1/11/12), 77 So.3d 947; State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297.

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.9/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
The second portion of the inquiry requires that a determination be made regarding the constitutional excessiveness of a sentence. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Washington, 46,568 (La.App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 2011-2305 (La.4/27/12), 86 So.3d 625.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.

.In State v. Henderson, supra, the defendant, a first time felony offender, pled guilty to manslaughter and was sentenced to serve 16 years at hard labor. However, the defendant in that case was involved in an actual physical altercation with the victim when the killing occurred.
*235 In State v. Hamilton, supra, the defendant, who had no prior criminal record, pled guilty to manslaughter and received a 12 ½-year sentence. However, again, the defendant in that case was involved in a physical altercation when she shot the victim.
In State v. Cotton, supra, the defendant was convicted of manslaughter and sentenced to serve 10 years at hard labor after stabbing and killing a man outside the defendant’s motel room. However, at the defendant’s trial there was evidence that the defendant acted under provocation. Specifically, after meeting the victim for a sexual encounter, the defendant discovered that the victim was a man.