h CARAWAY, J.
After entry of a plea of not guilty, Brandon Keith McCray was tried and found guilty as charged of second degree murder. He was sentenced to mandatory life imprisonment without benefit of parole, probation or suspension of sentence. McCray appeals his conviction, urging that he acted without the requisite intent due to his mental illness which prevented him from distinguishing between right and wrong. We affirm the conviction and sentence.

Facts

On July 13, 2002, McCray entered the home of his friend and cousin, Eugene “Woozy” Jones, and shot him five times, mortally wounding the victim. The victim’s girlfriend, her three children and a female friend were in the house when the shots were fired. Both women heard the victim yell “no” followed by multiple gunshots. One of the women peeked out of the window in time to see McCray getting into his car. A neighbor who was in her driveway also heard the gunshots. She saw McCray first get into his car and then walk back to the house toward the window. She witnessed McCray smile before returning to his car and driving away and saw that he had something silver in his hand that looked like a gun. McCray left the scene and turned himself in to uniformed officers who were working as funeral escorts about five or six blocks away. McCray smiled as he told the officers how he had just killed someone and pointed to a gun in the right passenger seat. The gun was later determined to have been the murder weapon. In videotapes of McCray’s transport to the police station, he 12calmly admitted to shooting the victim without any immediate provocation because the victim had been evil and involved in bombing the World Trade Center. McCray also described where the shots hit the victim. In a later taped statement, McCray told a detective that he had a dream about the victim being evil. McCray explained that the murder weapon did not belong to him but that the gun’s owner knew nothing of the crime. McCray and a friend had purchased the gun at a pawn shop the morning of the crime and had tested it in the woods.
Prior to trial, McCray entered a plea of not guilty and moved for the appointment of a sanity commission. The court appointed George Seiden and Charles Armi-stead to examine the defendant. Both physicians and McCray’s mother testified at the sanity hearing. Dr. Seiden concluded that McCray suffered from paranoid delusions at the time of his arrest and probable schizophrenoform, a beginning form of schizophrenia. Dr. Seiden opined that McCray was competent to stand trial and was able to distinguish between right and wrong at the time of the offense. Dr. Armistead diagnosed McCray with chronic active schizophrenia and agreed that McCray was competent to stand trial although he did not have enough information to determine whether McCray knew right or wrong at the time of the crime.
McCray’s mother testified that her son began to have mental health problems approximately two and one-half years prior to her testimony. She stated that McCray exhibited violent behavior and began to believe that everybody was evil. She had called the police on several occasions and Dwent to the coroner’s office at lease twice to have him committed. McCray did not receive medication until after he killed the victim.
Based upon this testimony, the trial court found McCray competent to stand trial. At the subsequent trial of this matter, the state submitted as its evidence the eyewitness testimony of the occupants of the house, McCray’s neighbor, the police *71 officers, the coroner’s testimony and McCray’s taped statements. Against his counsel’s advice, McCray testified in his own behalf. He acknowledged shooting the victim, but claimed that it had been in self-defense or an accident. However, McCray admitted that he intended to pull the trigger only the “last two times” while the victim was “running towards the window at an angle.” He also testified that he “ran to the car smiling” after shooting the victim and that he “wasn’t crazy.” From this evidence, a unanimous jury returned a second degree murder guilty verdict. This appeal ensued.

Dismission

On appeal, McCray argues that the evidence precluded him from being competent to stand trial and conclusively established his insanity at trial so as to exempt him from criminal responsibility. He concedes that trial counsel did not enter a plea of not guilty by reason of insanity, but argues that he should not be punished by such an omission.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed | ¿criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Thompson, 39,454 (La.App. 2d 3/2/05), 894 So.2d 1268; State v. Murray, supra. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Thompson, supra.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to | ¡^conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C. Cr. P. art. 641. The defendant’s mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. La. C. Cr. P. art. 642. The issue of the defendant’s mental capacity to proceed shall be deter *72 mined by the trial court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. La. C. Cr. P. art. 647.
“Not guilty and not guilty by reason of insanity” is one of four possible pleas to the indictment at the arraignment. La. C. Cr. P. art. 552. A plea of not guilty may be changed to not guilty by reason of insanity within 10 days after arraignment for good cause shown. La. C. Cr. P. art. 561. A legal presumption exists that a defendant is sane and responsible for his actions at the time of an offense. La. R.S. 15:432. To rebut that presumption and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. C. Cr. P. art. 652; State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27; State v. Odom, 33,340 (La.App. 2d Cir.5/10/00), 760 So.2d 576, writ denied, 00-1816 (La.6/29/01), 794 So.2d 821. However, when a defendant is tried upon a plea of “not guilty,” evidence of insanity or mental defect at the time of the offense shall not be admissible. La. C. Cr. P. art. 651.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor. La. C. Cr. P. art. 841.
These assigned errors raise issues of sufficiency of the evidence to convict and McCray’s competence to stand trial and sanity at the time of the shooting. For the following reasons, we reject each of these arguments.
The expert medical evidence presented by the state at the sanity hearing was sufficient to show that McCray was able to understand the proceedings against him and assist in his defense. Nevertheless, because no contemporaneous objection to the trial court’s ruling was urged by the defense, appeal of that ruling was waived.
 Further, McCray’s plea of “not guilty” barred him from presenting any evidence to support an affirmative defense of insanity and did not place his sanity at the time of the offense at issue. State v. Pitre, 04-0545 (La.App. 1st Cir. 12/17/04), 901 So.2d 428. In the absence of the special plea of insanity, evidence of insanity or mental defect was not admissible, either as a complete defense or for the purpose of negating specific intent. |7 La. C. Cr. P. art. 651, Official Revision Comment (a). Thus, review of the issue of whether he was able to distinguish right from wrong at the time of the offense is not before us. Any issue regarding the failure of defense counsel to have properly asserted a sanity defense is a matter which may be considered through post-conviction relief proceedings under La.C.Cr.P. art. 924, et seq.
Moreover, the evidence presented at trial is clearly sufficient to support the guilty verdict. McCray admitted to killing the victim and that he intended to pull the trigger the last two times although he missed with those last two shots. His post-crime statements that he shot the victim without provocation contradict his claims to have committed the killing in self-defense or accidentally. The physical evidence shows that McCray shot the victim five times at close range with a gun purchased and “tested” that day. The two “killing shots” were to the back of the *73 victim’s head, and he was also shot in the back of the neck, the right lower back, and the top of the left shoulder. When viewed in the light most favorable to the state, proof that McCray purchased a gun the day of the shooting and without provocation entered the victim’s house, shooting him at close range five times, is sufficient to support the determination that McCray had specific intent to kill or inflict great bodily harm. Therefore, this assignment is without merit. McCray’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.