MARC E. JOHNSON, Judge.
12Pefendant, Levance Williams, appeals his underlying convictions of carjacking, resisting a police officer with force or violence, and possession of cocaine and his habitual offender sentence from the 24th Judicial District Court, Division “P”. For the following reasons, the convictions for the underlying offenses and the habitual offender adjudication are affirmed. In addition, the matter is remanded to the trial court with instructions.

STATEMENT OF THE CASE

On March 10, 2010, the Jefferson Parish District Attorney filed a bill of information charging Defendant with carjacking, resisting a police officer with force or violence, and possession of cocaine in violation of LSA-R.S. 14:64.2, 14:108.2, and 40:967 C, respectively. Defendant was arraigned on March 11, 2010, and pleaded not guilty. On August 31, 2010, the case was tried before a 12-person jury that found Defendant guilty as charged. The trial court sentenced defendant on September 17, 2010, to imprisonment at hard labor for twenty years without benefit of parole, probation, or suspension of sentence on Count 1; imprisonment at hard labor for three years on Count 2; and imprisonment at hard labor for five years on Count 3, with all sentences to run concurrently with one another.
|3A1so on September 17, 2010, the State filed a habitual offender bill alleging Defendant to be a third felony offender. Defendant filed a motion to quash the habitual offender bill that was denied. On March 4, 2011, the trial judge found Defendant to be a “multiple offender,” vacated the “original sentence,” and re-sentenced Defendant under the habitual offender statute to imprisonment at hard labor for 40 years without benefit of probation or suspension of sentence. On March 10, 2011, Defendant filed a timely motion for appeal that was granted.

FACTS

On February 5, 2010, at 9:30 p.m., Stephanie Jefferson, a security guard and former correctional officer, picked up her son, Stephen, from work. Stephen and his thirteen-year-old brother were sitting in the back seat, and their six-year-old sister was sitting in the front passenger seat. Ms. Jefferson then drove to her mother’s house on Deacon Street in Avondale to drop off Stephen. When they arrived, she and Stephen exited the car, after which she saw Defendant, whom she knew from the neighborhood as “Bubba,” standing behind her father’s car. Defendant asked Ms. Jefferson if he could use her cell phone to make a phone call, so she gave the cell phone to him.
Ms. Jefferson and Stephen continued to walk to the front door so Stephen could go into the house, and Defendant followed them. Defendant asked Ms. Jefferson if her brother, Ronnie, was home, and she said, “No.” At that point, Defendant started acting very strangely and running around like somebody was chasing him. Defendant said that somebody was coming and somebody was running behind him, and he started running around the car. Ms. Jefferson was very afraid because she did not know what Defendant was doing. She and Stephen walked back down the driveway, but Defendant met her at the back of the car.
UMs. Jefferson tried to get into the car, but Defendant got between the driver side door and Ms. Jefferson. She then got into the car, and Defendant jumped in the car with her. Defendant straddled Ms. Jefferson with his chest facing hers, and they began to struggle. Stephen got out of the car and tried to pull Ms. Jefferson away from Defendant. Ms. Jefferson told Stephen to call 911. Stephen tried, but he *1107 could not get through; so, he went next door and then across the street to use the neighbor’s phone where he finally got through to 911.
At that same time, Ms. Jefferson was still struggling and trying to get Defendant off of her and out of the car. She kept kicking the door open so Defendant could not shut it, and Defendant began choking her. During the struggle, Defendant landed on Ms. Jefferson’s six-year-old daughter, who was very scared. At that point, Ms. Jefferson told Defendant to “just take the car and just go.” Defendant then got up off of Ms. Jefferson, and Ms. Jefferson grabbed her young daughter and ran inside of her parent’s home. Her daughter vomited, and Ms. Jefferson called 911.
In the meantime, Stephen saw Defendant back up out of the driveway, drive down the street approximately 15 yards, and run into a light pole. Afterward, Defendant went into the house across the street from where he hit the light pole. Deputy Rhonda Goff of the Jefferson Parish Sheriffs Office (JPSO) arrived, and Stephen directed her to the house at 105 Deacon Street where Defendant had entered. She called for backup, and five minutes later, JPSO Deputy Marc Macalu-so arrived at the scene.
Deputy Macaluso found an open side door. When he looked into the residence, he saw Defendant fighting with a younger black male, and there was also an older black male in the same room. The deputy entered the house, drew his side arm, and Defendant fled down the hallway. Deputy Macaluso ran down the Rhallway, and Defendant met him head-on running back, trying to get out of the hallway, at which time the deputy tackled Defendant, who landed on his stomach.
The deputy got on the lower portion of Defendant’s back, and Defendant struggled briefly. Defendant swung his arms, and Deputy Goff assisted Deputy Macalu-so in handcuffing Defendant. Deputy Ma-caluso patted down Defendant but did not locate any weapons or contraband, and he placed Defendant in the rear seat of his police unit. Deputy Goff brought Ms. Jefferson and Stephen to the scene, where they positively identified Defendant as the perpetrator.
At some point, a transport unit came to take Defendant away. As Deputy Macalu-so was removing Defendant from the back of the police unit, he saw on the back floorboard a large piece of off-white rock-like substance, which he believed to be crack cocaine. When he took Defendant out, he noticed several more pieces. Deputy Macaluso testified that when he was assigned his unit on that day, he conducted a visual inspection of the back seat, and he actually removed the rear seat to look inside, but he did not observe anything unusual. He further testified that defendant was the first person who was arrested and placed in the back of his police unit that day.
Thomas Angelica, an expert forensic scientist, testified that the substances found on the floorboard tested positive for cocaine.
Defendant testified at trial that shortly before the incident with Ms. Jefferson, he had gone to a playground/park where he took ecstasy and cocaine and watched others play basketball. Afterward, he walked down the street and asked Ms. Jefferson for her phone. He wanted to call his brother to come get him because he thought someone was trying to kill him. Defendant testified that he felt safe with Ms. Jefferson and wanted her to give him a ride; he got into Ms. 16Jefferson’s car and onto her lap; she tried to get out of *1108 the car and he told her not to; and he took the car and then wrecked it.
Defendant denied choking Ms. Jefferson, and he explained that Ms. Jefferson told him to take her car. After Defendant wrecked the car, he ran inside his cousin’s house. He denied resisting arrest. Defendant also denied that the cocaine on the floor of the police unit was his, and he did not know how it got there. He explained that his hands were cuffed behind his back when he was put into the police unit, and therefore, he could not have put cocaine on the floorboard. He also denied arguing or fighting with his two relatives inside the house. Defendant asserted that he was paranoid and probably acting strangely on the night in question because he had taken ecstasy and cocaine.
Lastly, Defendant admitted to having a conviction for possession with intent to distribute cocaine in 2007 and a conviction for injuring public records in 2008.

PRO SE ASSIGNMENTS OF ERROR

On appeal, Defendant alleges the following errors of the trial court: 1) the evidence was insufficient to convict him of the essential elements of the crimes beyond a reasonable doubt; 2) his continued incarceration would be a violation of his due process rights because the verdicts were contrary to the law and was based upon insufficient evidence; and 3) the cumulative effect of the constitutional errors committed before, during, and after the trial violated his equal protection and due process rights.

DISCUSSION

Defendant’s basis for all three pro se assignments is that the evidence was insufficient to support the verdicts.[1] He contends that he should be exempt from 17criminal liability because he was suffering from a mental defect at the time of the offenses that rendered him incapable of distinguishing between right and wrong. Defendant indicates that in light of his mental defect, the State failed to prove he intended to commit the crimes. He further contends that his “induced psychosis” should have provided a defense to the crimes. Lastly, he indicates that he had Ms. Jefferson’s permission to take the car, and therefore, he should not have been found guilty of carjacking.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01); 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court is *1109 not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342,8 p. 7 (La.10/17/00); 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04); 866 So.2d 973, 977.

Carjacking

Defendant indicates that he had Ms. Jefferson’s permission to take the car, and therefore, he should not have been found guilty of carjacking. LSA-R.S. 14:64.2 provides that carjacking is the intentional taking of a motor vehicle belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.
The evidence shows that Defendant got into the vehicle, sat on Ms. Jefferson’s lap, choked her, and struggled with her in order to force her to give him a ride or give him her car. During the struggle, he landed on Ms. Jefferson’s six-year-old daughter, who apparently was so traumatized by the event that she vomited. The record reflects that Ms. Jefferson only told Defendant he could take the vehicle because she feared for her life and the life of her children. She was scared and did not know “what defendant had” or what was wrong with him. Ms. Jefferson testified that she would have done anything to get Defendant to leave her and her children alone. Additionally, Defendant admitted at trial that he got into the car on top of Ms. Jefferson, that she tried to open the door and he tried to close it, and that he took her car and wrecked it. He denied choking her. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21, p. 7 (LaApp. 5 Cir. 4/29/97); 694 So.2d 1052, 1056.
|9In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to find Defendant guilty of carjacking.

Mental Defect/Induced Psychosis

Defendant contends that he should be exempt from criminal liability because he was suffering from a mental defect at the time of the offenses that rendered him incapable of distinguishing between right and wrong. He indicates that in light of his mental defect, the State failed to prove he intended to commit the crimes. He further contends that his “induced psychosis” should have provided a defense to the crimes.
“Not guilty and not guilty by reason of insanity” is one of four possible pleas to the indictment at the arraignment. LSA-C.Cr.P. art. 552. The defendant may withdraw a plea of “not guilty” and enter a plea of “not guilty and not guilty by reason of insanity,” within ten days after arraignment. LSA-C.Cr.P. art. 561. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial. Id. A legal presumption exists that a defendant is sane and responsible for his actions at the time of an offense. LSA-R.S. 15:432. To rebut that presumption and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. LSA-C.Cr.P. art. 652; State v. Silman, 95-154 (La.11/27/95); 663 So.2d 27, 32. However, when a defendant is *1110 tried upon a plea of “not guilty,” evidence of insanity or mental defect at the time of the offense shall not be admissible. State v. Necaise, 466 So.2d 660, 664 (La.App. 5 Cir.1985); LSA-C.Cr.P. art. 651.
In the instant case, we find that defendant’s plea of “not guilty” barred him from presenting any evidence to support an affirmative defense of insanity, and he | indid not place his sanity at the time of the offense at issue. State v. McCray, 39,883, p. 6 (La.App. 2 Cir. 6/29/05); 908 So.2d 68, 72, writ denied, 05-2015 (La.2/17/06); 924 So.2d 1015. In the absence of the special plea of insanity, evidence of insanity or mental defect was not admissible, either as a complete defense or for the purpose of negating specific intent. LSA-C.Cr.P. art. 651, Official Revision Comment (a). Thus, we conclude that review of the issue of whether defendant was able to distinguish right from wrong at the time of the offense is not properly before us for review. State v. McCray, 39,883 at 7, 908 So.2d at 72.
Nevertheless, Defendant argues that his voluntary drugged condition negated his intent to commit the crimes. The evidence presented at trial showed Defendant was behaving strangely at the time of the incidents-running around the car and saying that someone was trying to kill him, and that Defendant took ecstasy and cocaine prior to the incidents in question.
The fact that the offender is in an intoxicated or drugged condition at the time of the commission of the crime is immaterial except where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime. LSA-R.S. 14:15(2).
Voluntary intoxication can only be considered as a defense in cases where specific intent is a necessary element of the crime, and the defendant claims his intoxication precluded the capacity to form that intent. State v. Magee, 05-171, p. 5 (La.App. 5 Cir. 10/6/05); 916 So.2d 1178, 1182, writs denied, 06-461 (La.9/22/06); 937 So.2d 377, and 06^64 (La.9/22/06); 937 So.2d 377. Intoxication is an affirmative defense to a criminal chax-ge, and the burden is upon defendant to prove the existence of that condition at the time of the offense. State v. Edwards, 01-116 (La.App. 5 Cir. 6/27/01); 790 So.2d 109, 114, vnit denied,, 01-2235 (La.8/30/02);11 823 So.2d 935. When circumstances exist which indicate intoxication could have precluded specific intent, the burden shifts to the State to show beyond a reasonable doubt that specific intent was present. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact. Id.
In the instant ease, from review of the record, Defendant did not raise his voluntary drugged condition as a defense at trial. Since the transcript does not show it was raised as a defense, and the jury charges do not show that the jury was instructed as to such a defense. Moreover, we find that such a jury instruction could not have been given anyway because carjacking, resisting a police officer with force or violence, and possession of cocaine do not require specific intent. As was stated previously, voluntary intoxication can only be considered as a defense in cases where specific intent is a necessary element of the crime. Magee, supra. It is noted that defendant’s appellate counsel stated in his brief, “Admittedly, appellant’s intoxication or even drug induced psychosis may not have provided a defense to the general intent crime of carjacking.” He also stated in his brief that defendant’s *1111 drug induced paranoia was not a defense or an excuse.
LSA-R.S. 14:64.2 defines carjacking as the intentional taking of a motor vehicle belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation. LSA-R.S. 40:967 C provides that it is unlawful for any person to knowingly or intentionally possess a controlled dangerous substance as classified in Schedule II. Cocaine is listed in Schedule II. LSA-R.S. 40:964 A(4). The statutes are silent as to whether the intent is general or specific. In the absence of qualifying provisions, the terms “intent” and “intentional” have reference to “general criminal intent.” LSA-R.S. 14:11. It is 112noted that LSA-R.S. 14:108.2, resisting a police officer with force or violence, does not mention intent.
Thus, Defendant’s drugged condition during the commission of the convicted crimes is inconsequential because specific intent is not an element of these crimes. Therefore, we do not find the trial court erred in finding the evidence presented sufficient to convict Defendant of the charged crimes.

COUNSELED ASSIGNMENT OF ERROR

In the sole counseled assignment of error, Defendant alleges the trial court imposed an excessive sentence.

DISCUSSION

Defendant argues that his maximum 40-year enhanced sentence as a third felony offender was constitutionally excessive. He contends that his youth at the time of the first predicate offense, possession with intent to distribute, should serve to mitigate the weight that offense carries in considering the appropriate penalty to be imposed pursuant to the multiple bill. Defendant further contends that the crime of possession with intent to distribute is a non-violent offense, and that he received the minimum sentence for his guilty plea to that offense. With respect to the second predicate offense, injuring public records, Defendant asserts that he pleaded guilty to that offense at age 19 and received a one-year sentence in prison, and the offense was non-violent.
Defendant further asserts that the instant crime, carjacking, was serious, but his extreme level of intoxication bordering on insanity should be taken into account when considering his sentence. He argues that because of his intoxication, he should be judged less culpable than someone who soberly and coldly committed the exact same offense. As such, Defendant maintains that his carjacking conviction was not the most serious violation of the carjacking statute. He also | lsnotes that his sentence is disproportionate when compared to other sentences for similar carjacking convictions.
The State responds that the record and the jurisprudence support the maximum sentence imposed. It contends that the sentence was appropriate considering the nature of the defendant, the nature of the offense, and other sentences given for similar crimes. The State asserts that Defendant’s predicate offenses show a progression of criminal activity which came to a head in a violent and dangerous carjacking that endangered multiple individuals.
The record reflects that Defendant did not file a motion to reconsider his enhanced sentence pursuant to LSA-C.Cr.P. art. 881.1, but he did orally object to his enhanced sentence as excessive at the time his sentence was imposed. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for consti *1112 tutional excessiveness only. State v. Warmack, 07-311, p. 7 (La.App. 5 Cir. 11/27/07); 973 So.2d 104, 108.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03); 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04); 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue | 14on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07); 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07); 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id., 07-332 at 15-16; 975 So.2d at 656. Generally, the maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Id., 07-332 at 16; 975 So.2d at 656.
Defendant was convicted of carjacking. As such, he was exposed to a sentencing range of imprisonment at hard labor for two to twenty years. LSA-R.S. 14:64.2 B. The trial judge sentenced Defendant to the maximum sentence of 20 years at hard labor without providing reasons. The State then filed a habitual offender bill, alleging Defendant to be a third felony offender. After the trial judge found that the habitual offender bill was “satisfied,” he vacated the “original sentence” and re-sentenced Defendant to 40 years at hard labor. As a third felony offender with an underlying conviction for carjacking, Defendant was exposed to a sentencing range of 13.3 to 40 years. LSA-R.S. 14:64.2 B; LSA-R.S. 15:529.1 A(b)(i). Therefore, Defendant received the maximum 40-year sentence. The trial judge did not provide reasons for the enhanced sentence.
After review, we find that Defendant’s maximum 40-year enhanced sentence as a third felony offender was not excessive, considering the nature of the offense, and the nature and the background of Defendant. The evidence showed that Defendant got into the car on top of Ms. Jefferson and struggled with her for | ^control of the car. He violently choked her by putting his hands around her neck and squeezing it, after which he fell on top of the victim’s six-year-old daughter, who was so distraught she could barely speak and later vomited. Defendant’s actions endangered the lives of Ms. Jefferson and her three children. Afterwards, he took Ms. Jefferson’s car and crashed it into a light pole a short distance away. He, subsequently, fled the scene and resisted arrest and was later found to be in possession of cocaine. Additionally, Defendant has prior convictions for possession with intent to distribute cocaine and injuring public records.
*1113 Therefore, we do not find the trial court erred in sentencing Defendant to a 40-year enhanced sentence.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals eight errors patent.

Post-Conviction Relief

The transcript reflects that the trial judge did not advise Defendant of the provisions of LSA-C.Cr.P. art. 930.8 at the time of the original sentencing; however, the commitment related to the original sentencing shows that Defendant was advised that he had two years after judgment of conviction and sentence has become final to seek post-conviction relief. The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Because Defendant’s original sentence was vacated upon the imposition of his habitual offender sentence, the trial court’s lack of notice to Defendant of the filing delays for a post-conviction relief application is moot.
The transcript also reflects that at the habitual offender bill hearing, the trial judge advised Defendant he had “two years from the date the sentence becomes |1fifinal to file post conviction relief applications;” however, the commitment pertaining to that sentencing does not mention that the trial judge advised Defendant of the delays for filing post-conviction relief applications. Again, the transcript prevails. Id. Since Defendant was advised of the delays for filing a post-conviction relief application upon sentencing as a habitual offender, there is no corrective action required.

Appeal Deadlines

The trial judge incorrectly advised Defendant that he had five days to appeal the sentence. The State noted this error patent in its brief. LSA-C.Cr.P. art. 914B(1) provides that the proper time delay for an appeal is 30 days. However, Defendant filed a timely appeal; therefore, we find that the trial court’s failure to advise him of the prescriptive period for appeal is moot. State v. Chess, 00-163 (La.App. 5 Cir. 6/27/00); 762 So.2d 1279, 1284-85.

Admit/Deny Hearing

The record does not reflect that Defendant admitted or denied the allegations in the habitual offender bill. This Court has previously held that a defendant waives his right to admit or deny the allegations in the habitual offender bill when he proceeds to the habitual offender bill hearing without objecting. State v. Jerome, 03-126, p. 3 (La.App. 5 Cir. 4/29/03); 845 So.2d 1194, 1196. Because Defendant proceeded to the habitual offender bill hearing without objecting, we find that no corrective action is required.

Habitual Offender Rights

The record does not reflect that Defendant was advised of his rights prior to the habitual offender bill hearing. LSA-R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the habitual offender bill, his right to a hearing, and his right to remain silent. State v. Haywood, 00-1584 (La.App.17 5 Cir. 3/28/01); 783 So.2d 568, 582. The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when, as here, the habitual offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. Id., 00-1584; 783 So.2d at 582-83.
It is noted that Defendant remained silent at the hearing. Therefore, we find *1114 that the trial court’s failure to advise defendant of the specific allegations against him and of his right to be tried and to remain silent was harmless error.

Habitual Offender Adjudication

The State filed a habitual offender bill alleging Defendant to be a third felony offender. The transcript indicates that at the end of the habitual offender bill hearing, the trial judge said that “the Multiple Bill has been satisfied.” The commitment also reflects that the trial judge found Defendant to be a “Multiple Offender.” However, the trial judge did not state whether he found Defendant to be a third felony offender. Nevertheless, we find that no corrective action is necessary, since the State alleged Defendant was a third felony offender in the habitual offender bill and at a hearing. In addition, the trial judge stated that he recalled Defendant testifying at trial that he had two prior felony convictions.

Previous Sentence Vacated

The transcript reflects that the trial judge vacated the original sentence; however, he did not specify which of the three original sentences he was vacating. The commitment states that Defendant was found guilty under the habitual offender bill statute on Count 1. The transcript prevails. State v. Lynch, supra. Nevertheless, we find that no corrective action is necessary since the habitual offender bill was filed relative to his carjacking conviction, which was Count 1.

Statutory Restrictions/Enhanced Sentence

11sThe transcript reflects that the trial judge ordered Defendant’s enhanced sentence to be served without benefit of probation or suspension of sentence pursuant to LSA-R.S. 15:529.1 G; however, he failed to also order that the enhanced sentence be served without the benefit of parole as required by the underlying statute, LSA-R.S. 14:64.2. Because the underlying offense carried a disability against parole, the habitual offender sentence is likewise to be imposed without parole. State v. Bruins, 407 So.2d 685, 687 (La.1981). Accord,, State v. Singleton, 03-1307, p. 5 (La.App. 5 Cir. 3/30/04); 871 So.2d 596, 599. The State noted this error patent in its brief. However, according to State v. Williams, 00-1725 (La.11/28/01); 800 So.2d 790, 799, no corrective action is necessary because LSA-R.S. 15:301.1(0, imposes the restrictions by operation of law. State v. Johnson, 03-903, p. 7 (La.App. 5 Cir. 12/9/03); 864 So.2d 645, 654. Enhanced Sentence
The commitment reflects that the trial judge ordered the enhanced sentence to run concurrently with the sentences on Counts 2 and 3; however, the transcript does not show that the trial judge did so. The transcript prevails. State v. Lynch, supra. Therefore, the trial court is ordered to correct the commitment to conform to the transcript. The trial court is also ordered to make an entry in the minutes reflecting this change and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which defendant has been sentenced and to the General Counsel of the Louisiana Department of Public Safety and Corrections. State ex rel. Roland v. State, 06-244 (La.9/15/06); 937 So.2d 846 (per curiam).
11flDECREE
For the foregoing reason, the convictions and sentences of the underlying offenses are affirmed. Additionally, the habitual offender sentence of Levance Williams is affirmed. The matter is remanded to the trial court with instructions.

CONVICTIONS AND SENTENCES AFFIRMED; HABITUAL OFFENDER 
*1115
SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed first.